## In re LEFLYS.

## STRAUSS BROS. CO. v. WISCONSIN TRUST CO.

### (Circuit Court of Appeals, Seventh Circuit. January 4, 1916.)

### No. 2254.

BANKRUPTCY ⬅350—PREFERRED CLAIMS—SALE OR CONSIGNMENT—"CONDITIONAL SALE."

A contract between the claimant and the bankrupt provided that the claimant would stock the bankrupt's liquor department with liquors; that liquors were shipped on consignment, to be sold at retail for the claimant at invoice prices; that the bankrupt would save the claimant harmless from all damage to the goods, except that the claimant agreed to insure them against fire; that the bankrupt would pay all the expenses; and that all proceeds of sales were to be the property of the claimant; that title to all unsold goods was to remain in it, and they were on demand to be returned free of charge; that, if sales were made upon credit, the bankrupt would guarantee collection; that as compensation the bankrupt was to receive the excess of the selling price above the invoice price; that unsalable merchandise might be returned; that the bankrupt would purchase what remained after two years at invoice prices, title not to vest in it until payment; that future shipments of liquors would be received on the same terms, except that goods remaining unsold on the 10th day of the month following the shipment would be purchased by the bankrupt. There was no provision for segregation of the proceeds of sales from the bankrupt's general funds. *Held*, that the transaction was not a consignment, but a *conditional sale*, within St. Wis. 1913, § 2317, providing that such contracts shall not be valid as against third parties unless filed in the proper office as therein provided, and where this statute was not complied with a claim for proceeds of sales not accounted for by the bankrupt was not entitled to priority.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 537; Dec. Dig. ⬅350.

For other definitions, see Words and Phrases, First and Second Series, Conditional Sale.]

Appeal from the District Court of the United States for the Eastern District of Wisconsin; Ferdinand A. Geiger, Judge.

In the matter of one Leflys, bankrupt. From an order disallowing as a preferred claim the claim of the Strauss Bros. Company, opposed by the Wisconsin Trust Company, trustee, the claimant appeals. Affirmed.

Bankrupt conducted a general department store at Milwaukee, Wis. Appellant is engaged in the wholesale liquor business at Chicago, and agreed to stock bankrupt's liquor department with wines, beverages, etc., under the conditions set out in a contract entered into between the parties on March 19, 1913. According to the terms of said contract, on the date of its execution appellant shipped to bankrupt a supply of liquors; the contract reciting that the same were shipped on consignment only, to be sold on behalf of appellant at retail at prices not less than the invoices thereof furnished bankrupt. After delivery on the dock at Milwaukee, bankrupt was to save appellant harmless from all loss, damage, etc., to said merchandise, excepting damage by fire—appellant agreeing to insure the same against loss by fire—and was also to pay all expenses whatsoever incident to the handling and sale of said goods, place the same in its store for sale for the account of appellant, and use its best efforts to sell the same. All money derived from sales was to be the property of appellant, title to all said goods remaining unsold was to re-

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

main in appellant, and such unsold goods were, upon demand by appellant, to be returned to it free of any charge or expense. Sales were to be at retail and for cash only; it being provided, however, that, in case any sales were made upon open accounts for credit, bankrupt would guarantee the collection of such accounts and be answerable to appellant for the amounts due. As full compensation for its part in the transaction, bankrupt was to have such sum as it might receive for the merchandise in excess of the invoice prices thereof. Any of said merchandise found to be unsalable, through no fault of bankrupt, might within one year be returned to appellant, bankrupt to pay freight, etc., and thereafter be released from obligation to sell such returned goods. Bankrupt agreed to sell one-third of said liquors within one year, one-third within two years, and one-third within three years from the date of the contract, and, failing so to do, to purchase what remained at the expiration of such periods from appellant for cash at said invoice prices, title not to vest in bankrupt until the purchase price be actually paid to appellant; on the same terms and conditions, in the event bankrupt discontinued its liquor department within three years, it was to purchase all unsold liquors in its possession at the time of such discontinuance. Future shipments of liquors to bankrupt were to be received and handled by it on the same terms and conditions governing the original transaction, except as to the time within which said goods were to be sold; bankrupt agreeing to purchase all goods remaining in its possession unsold on the 10th day of the month following the date of shipment thereof by appellant. The contract further recited that nothing therein contained was to be construed as vesting title to any of said merchandise, covered either by the original or subsequent shipments, in bankrupt until cash therefor had been received by appellant, unless otherwise agreed in writing, and that no bill or invoice sent bankrupt, nor failure on the part of appellant to note on any such bill or invoice that the merchandise covered thereby was shipped on consignment, nor the absence in any such bill or invoice of reference to the contract, should be held to waive any of the provisions thereof. It was further provided that, in the event appellant should desire to cancel said contract, all merchandise then in bankrupt's possession which had not been sold, nor purchased and paid for in cash by bankrupt, should be returned to appellant upon demand by it, who thereupon might, at its election, terminate the contract, and, upon the refusal or neglect of bankrupt to so return said property, take possession of said property with or without process of law, and pursue and take the same from any place to which it might be removed and from any person into whose hands or possession it might be.

Leflys sold said property so alleged to be consigned and failed to account to claimant for $1,250.58 of the proceeds thereof. The record makes no further showing as to what became of said sum and no attempt was made to trace said proceeds into the trustee's hands. Leflys was thereafter declared a bankrupt, and claimant presented to the trustee its claim for said balance as for "money converted by said Leflys belonging to claimant under the terms of the agreement" aforesaid, making a copy thereof Exhibit A thereto, and claiming its allowance as a preferred claim. No contest was made as to the amount thereof, but objection to its allowance as a preferred claim was duly urged. The referee allowed the claim for $1,250.58 as a preferred claim. On review the District Judge reversed the order of the referee, from which judgment the matter is before us on appeal. The failure of the District Court to allow the same as a preferred claim is assigned for error. Other facts appear in the opinion.

Leon B. Lamfrom, of Milwaukee, Wis., for appellant.

Albert K. Stebbins and Jackson B. Kemper, both of Milwaukee, Wis., for appellee.

Before KOHLSAAT, MACK, and ALSCHULER, Circuit Judges.

KOHLSAAT, Circuit Judge (after stating the facts as above). The contract under consideration is one not easy to classify. It indicates

an intention to secure the advantages and avoid the disadvantages of a conditional sale. In arriving at a proper construction of it, little weight can be given to the frequent allusions therein to the claim that the relation of the parties is that of principal and agent, as against the effect of its terms. The bankrupt was bound to purchase all of the merchandise not returned as unsalable within one year. While it was provided that the goods and proceeds belonged to appellant, no provision for segregation of the proceeds was required, so that such moneys were permitted to go into the general funds of the bankrupt. There was no obligation upon the bankrupt to return any of the merchandise in kind provided the bankrupt paid the cash therefor. All expenses arising after loading were assumed by bankrupt, except the insurance. It might sell on credit, but must guarantee the amount of sales to appellant. Bankrupt's compensation and expenses must be covered by the excess of sales price over purchase price. No salary or commission was provided for it. There was no price of sale by it agreed on, save that the contract price must be realized.

In Re Galt, 120 Fed. 64, 67, 56 C. C. A. 470, 473, this court said:

"The distinction between bailment and sale is not difficult of ascertainment, if due regard be had to the elements peculiar to each. In bailment the identical thing delivered is to be restored. In a sale there is an agreement, express or implied, to pay money or its equivalent for the thing delivered, and there is no obligation to return."

And again, on page 68 of 120 Fed., on page 474 of 56 C. C. A.:

"The test would seem to be: Has the sender the right to compel a return of the thing sent, or has the receiver the option to pay for the thing in money?"

In that case the petitioner had reserved the right, upon failure to sell the wagons within a year, to require the bankrupt either to pay cash therefor, give his note, or store the wagons subject to petitioner's order, at the petitioner's option. The bankrupt had no choice. The transaction was held to be a bailment.

In Lenz v. Harrison, 148 Ill. 598, 36 N. E. 567, it was provided that, if wagons were not sold within a year, Harrison might give his note for the balance unpaid, if so required. This provision was held to indicate that the transaction was a sale.

The Eighth Circuit Court of Appeals, in Deere Plow Co. v. Mc-David, 137 Fed. 802, 70 C. C. A. 422, in dealing with a somewhat different contract, wherein the implement company was required to segregate the cash and note proceeds from the general fund of the business, held the transaction to be one in which the goods actually remaining in the dealer's possession belonged to the original seller, while the latter was not entitled to the proceeds of those sold which had gone into the general fund.

In Newmark on Sales, § 23, this provision as to compensation is said to be inconsistent with the claim that the parties occupied the relation of principal and agent in the transaction. The same position was taken by Judge Philips, of the Eighth Circuit, in Re Rabenau (D. C.) 118 Fed. 471, citing Kellam v. Brown, 112 N. C. 451, 17 S. E. 416, Ex parte White, 6 Ch. App. 397, and Chickering v. Bastress,

130 Ill. 206, 22 N. E. 542, 17 Am. St. Rep. 309.  In the last-named case the court says:

"The provisions [of the contract] authorizing Pelton & Co. to determine solely for themselves at what prices they would sell the pianos from their store is almost conclusive that in reality they were not acting as the agents or factors of the Chickerings; but that, with the further provision that they were to bear as their proper burden all the expenses of shipment, etc., the same, precisely, as purchasers, would leave no doubt that the contract was not one of bailment, or of principal and factor."

To the same effect is Thompson v. Paret, 94 Pa. 275.

Taking into consideration, further, the so-called insecurity clause of the contract, commonly used in chattel mortgages and conditional sale agreements, together with the general effect of all the other provisions of the contract, not specially dwelt on herein, we are of the opinion that the transaction effected was that of a conditional sale, and not a consignment, and within the terms of section 2317 of the Revised Statutes of Wisconsin, which provides that:

"No contract for the sale of personal property, by the terms of which the title is to remain in the vendor and the possession thereof in the vendee until the purchase price is paid or other conditions of sale are complied with, shall be valid as against any other person than the parties thereto and those having notice thereof unless such contract shall be in writing, subscribed by the parties, and the same or a copy thereof shall be filed in the office of the clerk of the town, city or village where the vendee resides."

With this statute appellant failed to comply.  That being so, the claim for priority as against the trustee was properly denied.

The judgment of the District Court is affirmed.