## In re WAYSIDE FURNITURE CO.

### UNION FURNITURE CO. v. GOETZ.

### No. 4907.

Circuit Court of Appeals, Seventh Circuit.

Sept. 23, 1933.

I. A. Fish, G. R. Hoffman, J. H. Marshutz, and E. H. Hallows, all of Milwaukee, Wis., for appellant.

I. E. Goldberg, of Milwaukee, Wis., for appellee.

Before ALSCHULER and SPARKS, Circuit Judges, and WILKERSON, District Judge.

WILKERSON, District Judge.

The appeal is from an order denying appellant's petition for reclamation of certain furniture from appellee. The right to reclaim is asserted under a contract set out below.[1]

---

[1] "This agreement, made this 30th day of June 1930, between Union Furniture Company of Rockford, Illinois, party of the first part, and Wayside Furniture Stores, party of the second part.

"Witnesseth: That the party of the first part in consideration of the compensation and conditions hereafter named, agrees to forward to the party of the second part, on consignment, certain articles of furniture.

"That the party of the second part, in consideration of the said furniture forwarded to him or them by the party of the first part, on consignment, agrees to accept, take delivery of, and sell the said furniture and to remit and pay to the party of the first part the sum or sums of money set forth on invoice rendered at the time of shipment, or such part or parts thereof as is represented by the values as so invoiced, of the furniture sold, within thirty (30) days after such sale or sales are made.

"That the party of the second part shall pay all expenses for the storage, cartage, transportation, handling, sale, and distribution of the said furniture and all expenses incident thereto, except on return of merchandise requested by party of the first part, or on account of defects, in which case said expense shall be paid by party of the first part.

"That the party of the second part shall insure the said furniture against both fire and theft for the protection of the party of the first part, and the party of the second part agrees that the failure to keep said insurance in full force and effect shall be deemed negligence on the part of the party of the second part and render him or them liable to the party of the first part for any loss occasioned by such failure to insure. Said policies, or the premium receipts therefor, shall be held by the party of the first part.

"That the party of the second part shall keep account books and records giving complete information covering all transactions in connection with the sale and distribution of the said furniture, and such books and records shall be open at all times to the inspection of any duly authorized representative of the party of the first part. All furniture shipped

202

The Wayside Stores, party to the contract of June 12, 1930, was a partnership. Bankrupt, which was incorporated on June 30, 1930, continued to receive furniture shipped under the contract. The contract was not filed for record until October 7, 1932, and the petition in bankruptcy was filed on October 22, 1932.

---

under the terms of this agreement shall be kept at the store of the party of the second part at Milwaukee until sold and shall be subject to inspection by the party of the first part or its agents during business hours.

"That the party of the second part shall make to the party of the first part weekly written reports in detail covering all transactions in connection with sale and distribution of said furniture and the quantity or quantities remaining in his or their custody as of the date of such reports.

"It is further agreed that if default is made in any of the agreements or conditions herein contained, to be kept and performed by the party of the second part, then this agreement shall terminate and be ended at the option of the party of the first part, its agents or agent with or without notice; it is hereby agreed that the extension of any of said payments or waiver of the breach of the said conditions, shall not in any way impair or forfeit the rights of the party of the first part hereunder; and it is further agreed that the party of the first part, its agents or agent, may with or without notice and without process of law, take possession of the said furniture, or any part thereof that remains unsold or in the custody of the party of the second part, and for that purpose may enter any of the premises of the party of the second part to search for or obtain the said furniture, using such force as may be necessary in so doing, and the party of the second part hereby waives any trespass or any rights of action for damages which he might or could have against the party of the first part, or its agents, by reason of the party of the first part, or its agents, procuring or attempting to procure possession of said furniture after forfeiture as aforesaid.

"It is further agreed that the party of the second part, without default, keeping and performing all of the said agreements and conditions, shall at any time during the term of the agreement have the privilege of purchasing said furniture, or any part thereof, upon such terms as may be specifically agreed to by the parties hereto. But it is expressly understood that the property in said furniture and the title to same, remains in the party of the first part, subject to be divested only according to the terms of this agreement.

"It is further agreed that the party of the first part may put an end to and terminate this agreement and take possession of any furniture covered by this agreement and in the custody of the party of the second part as of the date of such notice, by ten (10) days notice in writing sent postpaid to the party of the second part. Any uncompleted business arising from sales theretofore made by party of the second part shall be consummated on the same basis and terms as if this agreement were continuing. Party of the second part agree to properly crate and ship any unsold goods without charge to any address which party of the first part may designate if this contract be terminated.

"In Witness Whereof, the said parties have hereunto set their hands on the day and year first above written.

　　　　"Union Furniture Company
　　　　　"By W. L. Anderson, Its Secretary
　　　　　　"(Party of the First Part)
　　　　"Wayside Furniture Stores
　　　　　"By W. K. Kuebler, Its Trustee
　　　　　　"(Party of the Second Part)"

Appellant claims that the contract is one of consignment. The referee held that the contract was one of conditional sale not filed as required by the law of Wisconsin, and that it was not an agreement between the bankrupt and the appellant. The District Court sustained the referee.

In considering this contract, the language of this court In re Leflys, 229 F. 695, 696, is pertinent. The court said: "The contract under consideration is one not easy to classify. It indicates an intention to secure the advantages and avoid the disadvantages of a conditional sale. In arriving at a proper construction of it, little weight can be given to the frequent allusions therein to the claim that the relation of the parties is that of principal and agent, as against the effect of its terms."

In the contract now before the court there is no provision for the segregation and marking of the goods. It is not required that the Wayside Furniture Company shall be held out as the agent of the appellant. There is no reservation of title in the proceeds and no provision against commingling of the proceeds. The Wayside Company could sell the furniture at any price and on such terms as it saw fit to do. Its only obligation was to pay to the Union Company within thirty days after sales made by second party the amount at which the furniture was invoiced. The provision that the Wayside Company shall have "the privilege of purchasing such furniture or any part thereof upon such terms as may be specifically agreed to by the parties thereto" is meaningless unless it is read in connection with the right of the Wayside Company to sell the furniture and convey title thereto upon payment of the invoice price within thirty days. Taking the instrument as a whole, it appears that the consignee is at liberty to sell at a price and on terms fixed by itself, being answerable to the consignor for a fixed price. The contract, in our opinion, cannot be regarded as one of consignment. In re Leflys, supra; Flanders Motor Co. v. Reed (C. C. A.) 220 F. 642, 644; In re Garcewich (C. C. A.) 115 F. 87; In re United States Electrical Supply Co. (D. C.) 2 F.(2d) 378, 380.

The distinction between a contract such as the one now before us and contracts like the ones involved in Ludvigh v. American Woolen Company, 231 U. S. 522, 34 S. Ct. 161, 58 L. Ed. 345, and similar cases, is pointed out in Flanders Motor Co. v. Reed, supra. The court said:

"The District Court held the trustee in

that case entitled to the goods, notwithstanding the attempted reservation of title (176 F. 155); the Court of Appeals reaching the contrary result (188 F. 30, 110 C. C. A. 180), and the decision of the Court of Appeals being affirmed by the Supreme Court. In the opinion of the Court of Appeals it was said (188 F. 30, 33, 110 C. C. A. 180, 183):

" 'Contracts of sale under which title is to remain in the vendor, although the vendee may consume the goods, or sell them and apply the proceeds to his own use, are fraudulent as to creditors, because the stipulation that title is to remain in the vendor is entirely inconsistent with the purpose of the contract'

—citing the decision of the same court in Re Garcewich, 115 F. 87, 53 C. C. A. 510. In the case at bar there were no provisions to prevent the vendee from thus consuming the goods, or selling them and applying the proceeds to his own use, and Re Garcewich therefore applies."

We are also of the opinion that the contract falls within the definition of "conditional sale" in section 122.01 of the Wisconsin Statutes, 1931.[2] The right of the consignee to sell on his own terms and convey title subject only to a liability to pay the invoice price within thirty days is a relinquishment by the consignor of title to the proceeds which stand for the property in the hands of the consignee. This brings the contract within the definition of paragraph (a). While appellant claims that the clause giving consignee the right to purchase the property upon such terms as the parties may agree to adds nothing to the contract, nevertheless, it is in the contract, and brings it within the terms of paragraph (b).

Appellant asserts that, as the contract was filed on October 7, 1932, and the bankruptcy suit was not filed until October 22, 1932, it is valid against the trustee under section 122.05 of the Wisconsin Statutes, 1931.[3]

The document filed was a contract between Union Furniture Company and Wayside Furniture Stores, by W. K. Kuebler, its trustee. Nothing was filed to show that it was adopted or acted upon by bankrupt. No contract with bankrupt was filed.

The judgment of the District Court is affirmed.

[2] 122.01 *Definitions.* (1) In this chapter "conditional sale" means (a) Any contract for the sale of goods under which possession is delivered to the buyer and the property in the goods is to vest in the buyer at a subsequent time upon the payment of part or all of the price, or upon the performance of any other condition or the happening of any contingency; or (b) any contract for the bailment or leasing of goods by which the bailee or lessee contracts to pay as compensation a sum substantially equivalent to the value of the goods, and by which it is agreed that the bailee or lessee is bound to become, or has the option of becoming the owner of such goods upon full compliance with the terms of the contract.

(2) "Buyer" means the person who buys or hires the goods covered by the conditional sale, or any legal successor in interest of such person.

(3) "Filing district" means the subdivision of the state in which conditional sale contracts, or copies thereof, are required by this act to be filed.

(4) "Goods" means all chattels personal other than things in action and money, and includes emblements, industrial growing crops, and things attached to or forming a part of land which are agreed to be severed before sale or under the conditional sale.

(5) "Performance of the condition" means the occurrence of the event upon which the property in the goods is to vest in the buyer, whether such event is the performance of an act by the buyer or the happening of a contingency.

(6) "Person" includes an individual, partnership, corporation, and any other association.

(7) "Purchase" includes mortgage and pledge.

(8) "Purchaser" includes mortgagee and pledgee.

(9) "Seller" means the person who sells or leases the goods covered by the conditional sale, or any legal successor in interest of such person.

[3] 122.05 *Conditional sales void as to certain persons.* Every provision in a conditional sale reserving property in the seller, shall be void as to any purchaser from or creditor of the buyer, who, without notice of such provision, purchases the goods or acquires by attachment or levy a lien upon them, before the contract or a copy thereof shall be filed as provided in this chapter, unless such contract or copy is so filed within ten days after the making of the conditional sale.